Our third case this morning is No. 24-1457 LBT IP v. Uber Technologies. Okay, Mr. Bradley. May it please the Court? The Board's finding of a motivation to combine the Robert and Curatolo prior art references was not supported by substantial evidence. It was based on impermissible hindsight reconstruction, using our patent as a blueprint or a roadmap for what they were trying to accomplish. The Robert reference was from 1994, before GPS was prevalent. And what Robert did was he said, we want to track these targets, this fleet of vehicles that are going to be driving around. We can't afford, they're too big, we can't put GPS in each one of these. So what we'll do instead, Robert said, was we'll have some mobile roving tracking stations, other vehicles, and we'll just put a couple out there. Those will have GPS, and then we'll triangulate the positions of all these vehicles. Much more efficient back then in 94. A decade later, nearly a decade later, in 2003, with Curatolo, now GPS is far advanced. Curatolo says GPSes are super small. You can hide them in a bracelet, in a shoe. We'll just track them directly, send them to a monitoring station. Totally different system. And what the board did, using hindsight, was take Curatolo's monitoring station and tack it on to Robert's system that already was monitoring in a different way. Wouldn't need that. It made no sense to add the Curatolo monitoring station on top of the Robert system that was already complete. And Robert emphasized. Wouldn't having a monitoring station improve Robert? It would not under what Robert was trying to accomplish. Robert emphasized that it is a, quote, truly mobile system, where, quote, all of the components are mobile. And the notion of putting a centralized monitoring station that's fixed somewhere for Robert on top of the roving receive stations that are already. To be consistent with Robert's purpose. I'm sorry. It doesn't have to be consistent with Robert's purpose if there's a motivation to add a monitoring station for other reasons. The problem was there was not a motivation. If a person is still in the art. Well, it would be a motivation if it would improve Robert. If it would improve Robert. Even if you disagree that the improvement is somehow consequential. If it's an improvement, it's an improvement. That would be a motivation, would it not? If that were true, then yes, it would qualify. But here, it's not an improvement to Robert. Robert was going out of its way to indirectly triangulate the locations of the targets. And it did so without a monitoring station. There was the receive station that determined the target's locations itself would monitor. There was no, as the claims of our patent require, there was no sending of a signal to a separate centralized monitoring station. There was no communication with that monitoring station back to a user control, a user terminal. Robert's remote control that starts the system has no capability whatsoever to receive information from a monitoring station or otherwise. There were at least those three changes that the board had to make in order to combine these two references. And the way they did it. But it seems to me you're describing some limitations of Robert that would, that one of order of skill in the art might be very interested in overcoming. If not, if you stay true to the Robert approach of having a truly mobile system. There was no motivation. One of the Robert claims, 36, talks about monitoring, right? Claim 36 talks about a remote station. But it, under the evidence. Monitoring station. No. No, your honor. It never, it's not a monitoring station. The board called it centralized. I'm sorry. I thought claim 36 used the word monitor. What page do we find claim 36? It does say, claim 36 does say that it can monitor. We don't dispute that the Robert system can monitor the receive stations indeed monitor. And they can take action such as if there's a problem, they can drive to the target. They can notify the authorities. Those receive stations are already monitoring. And the evidence as to claim 36 was that the remote station discussed there was just another one of these triangulation stations. That itself was calculating the location of the target. At no point was this information, after being, after calculating the GPS location. At no point was it sent off to a separate station as our claims require. Where that separate station, the actual monitoring station, was connected back to the user terminal. Which Robert did not have a user terminal that could receive any information. The board's analysis here was based on hindsight. And the way they did it was by cherry picking parts of the references. When we emphasize these differences between the systems and why a person of skill and the art would not have been motivated to combine them. The board said, well, we're only looking at Curatolo for its remote monitoring station teachings. Not its location determination features. But that misses the point. Under this court's case law, this court has said time and again. This is Eli Lilly versus Actavis. Quote, it is impermissible to pick and choose from any one reference. Only so much of it as will support a given position. To the exclusion of other parts necessary to the full appreciation of what such reference rarely suggests to one of ordinary skill in the art. Here, if a person of skill in the art in 2005, at the time of our invention, if they had Robert and Curatolo in front of them and asked, okay, what are you motivated to do based on these? Well, respectfully, they would look at Robert and say, we don't need your complicated, decentralized network of triangulation stations. Because now, as Curatolo says, GPS is miniaturized. It's small. You can easily hide it in a bracelet. We'll just do that. There's no reason to take Robert's outdated system of triangulation systems that itself could already monitor a fleet of vehicles and that Robert emphasized was a truly mobile system where all the components are mobile. I'm still confused. If we look at 1446 and claim 36 of Robert, it talks about a display device being located at a remote station that communicates with said processor indicating the position of said target. Why isn't that the kind of monitoring that the combination contemplates? Because when you look at back at what Robert is talking about for that remote station, that is just another, the board acknowledged that that remote station determines the target's location. It is not, as in our patent, there's a separate device that determines the target's location and then there's a claimed signal that sends it off to a different station. The remote station in claim 36 of Robert is just another triangulation station. The board acknowledged that in a footnote. Uber's expert admitted it during his testimony. And so there is no separate monitoring station that gets a signal that connects back to a user terminal. The board's findings, when we presented this and explained how there's no motivation to combine, the board said that our arguments amounted to attacking the references individually. But that misunderstood our arguments. Our argument was not that we're attacking the references individually. We were demonstrating how there was no motivation to combine. Again, a person at the time looking, a person of skill in the art at the time, with Robert and Curatolo and asked, what are you motivated to do based on these? There's no reason to keep Robert's system that does not have GPS in the targets, because he couldn't afford it, it was too big back then, and put him in these roving stations and say, well, we'll do all that and we'll add a monitoring station on top when Robert was already monitoring through its mechanism. The monitoring station that the board tacked on was redundant of the functionality that Robert's receive stations were already doing. And in the end, you know, this court's law, KSR's law. You're not arguing that Robert anticipates. They have a ground that they say Robert renders obvious these claims. The board, which is the ground under Claim 36, to your comment, Judge Dyke, to your question, that ground was not reached by the board. Here we're only talking about the combination of Robert and Curatolo. We'd be very pleased to go back and explain to the board on remand about why ground one, based on Curatolo alone, including Claim 36, isn't enough. We don't have that here. Instead, what we have here is the combination. And again, the view that Curatolo would be combined. It suggests that monitoring would be useful, which helps to suggest why you would take that from Cerandolo, the monitoring. But Robert was already monitoring. It was already doing it in a different way. And there's no basis to add a second monitoring system that now defies what Robert is emphasizing, which is a truly mobile system where all the components are mobile. And the board would say, well, we're going to force upon you anyway. This centralized, static, separate monitoring station that there's no disclosure communicates back to the user terminal, even though the claims require it. So the point is there's no motivation. The board erred by just using hindsight. And this court should reverse on this ground two and send it back to address ground one, which is based on Curatolo alone and Claim 36, that disclosure. And ground three, but that only addresses two claims. So it's not a concern for us because it's not relevant anyway. So we would ask for that relief. I'll reserve the rest of my time. Okay. Mr. Haber. Thank you, Your Honors. May it please the court, Benjamin Haber for Appley Uber. I want to just mention a few things that aren't disputed here because I think it's important. The appellant doesn't dispute the board's express claim construction determinations, doesn't dispute the substantial evidence that the board found that Robert and Curatolo teach all of these claim elements. And they frankly don't dispute the substantial evidence that the board found that one of Skillinger would have these two references together when they were trying to solve this problem. Instead, they raise only the following two issues on appeal. Appellant believes that Robert and Curatolo would have been combined, but they would have been combined differently than the board found. And appellant believes that the evidence relied upon by the board for its motivations findings are insufficient. All of these complaints really just boil down to arguing against the substantial evidence on which the board's decision is based and does not approach the high burden for reversing such questions on appeal. I think to level set here, the combination that the board found by substantial evidence is important to have in mind. First, the board relied on Roberts' teachings for nearly all of the claim elements. Those are the elements related to the first and second tracking devices, the transmitted signals and identifications, determining the location of the tracked object. That all comes from Robert. That's set out in the board's final written decision at appendix 26 through 32. Second, the board brought in Curatolo for its teachings related to the backend monitoring stations and reporting functionalities. Specifically, the board relied on Curatolo elements 105, which is the monitoring station, and 107, the remote receiver, as set out in the appendix at 33-34. And lastly, the board relied on substantial evidence from both references as to what the combination would be. The combined system would allow for the performance of centralized tasks, such as logging and monitoring the positions of a large number of vehicles, such as a fleet of vehicles at a remote location. And that finding is at appendix 34. The board's conclusions are plainly rooted in substantial evidence, as the board set out in a bulletized list, setting out some of that evidence at appendix page 43. That is evidence from Robert regarding taking appropriate actions, such as notifying authorities, logging positions. As Your Honor noted, they also relied on the teachings from Robert's claim 36 that are suggestive of remote monitoring. That's at appendix 14-46. And they also relied on Robert's specific teachings of monitoring fleets of vehicles. That's at appendix 14-38. And then turning to Curatolo, augmenting Robert's teachings, Curatolo teaches benefits of centralized monitoring. That's in its figure 2 at appendix 14-49. And then Curatolo also teaches, similar to Robert, some benefits of doing the centralized monitoring, such as logging vehicles. And that's at paragraphs 81 and 82 of Curatolo, appendix 14-56. In addition to the references themselves, there is substantial unrebutted expert testimony from both Uber's expert and appellant's expert that the board relied on. They, for example, found that everything would have been implemented with routine and understood technology at the time. And they relied on these credibility determinations of expert testimony in supporting their opinion. And ultimately, all of this is substantial evidence supporting the board. And frankly, nothing that appellant argues in response undermines that substantial evidence. Patent owner makes, appellant makes a few arguments. One, they argue that there was some burden that was placed on them. That is just not accurate. What the board did was made an express findings of motivations and expectations of success. And then the board, as it is instructed to do by this court, resolves all of the counterarguments that appellant made below regarding alleged differences between the references, regarding the argument that one of skill in the art would have added GPS or done something different than what the board said. Those were all refuted by the evidence itself. They were refuted by Roberts and Curatolo. I wanted to respond to a couple points that appellant made specifically as to the underlying decision. They argue that the board's decision was based on some improper timing. I think we have to take the board at its word. And the board told us at Appendix 7 in the final written decision that they were going to consider obviousness at the time of invention. And in fact, they did. They relied on substantial expert testimony from both of the experts regarding technological complexities associated with GPS, reasons why from Robert and from our technical experts, explanation why one of skill in the art would take the path that they took, which is to maintain Robert's triangulation approach and add a monitoring station. And they specifically relied on benefits that were taught by Curatolo of centralized control. So when there is a fleet of vehicles and those vehicles need to be monitored, and there's a large number of those vehicles, you want to have a system operator, which is what Robert teaches. And you want to have that control done in a centralized fashion. And that benefit was specifically implemented by Curatolo's remote monitoring station, suggested by Robert Claim 36, and then, in fact, implemented by express teachings of Curatolo. Another argument that PatentOwner makes is that there was some sort of redundancy that would be implied in this combination. That argument was presented below. It was rejected below. The system is not redundant. There is a set of functionality that is done in Robert's remote transmit and receive stations that is done in a decentralized ad hoc one-on-one type way. Robert suggests that it might be better to centralize that as Claim 36. And in fact, in the combination, that's what the Curatolo teaching does. It takes some of that functionality that is done in a one-on-one point-based ad hoc approach and puts it into a remote monitoring station. So there is no redundancy. In fact, it is an improvement on specific tracking functionality that is implemented by the teachings of Curatolo. One other point that I wanted to make is regard to the board's treatment of this court's opinion in Intel v. Qualcomm. The board considered Appellant's arguments and they acknowledged that what Appellant was essentially arguing is that one-on-one skill in the art would do something different in their view better than what Petitioner was suggesting. The board rejected that argument because, as this court held, it is not necessary to show that a combination is the best option, only that it is a suitable option. And after finding a motivation to combine and an expectation of success, they rejected Patinone's argument that there was some better way to do things and held under KSR that the combination was nothing more than a predictable use of known elements for their intended purpose and thus the claims were obvious under the applicable legal standards. So with that, unless your honors have any additional questions, I would ask your honors to affirm the finding of the board and I thank you for your time. Thank you. Mr. Bradley.  Just a few comments. So my opponent here said at the beginning that we, LBT, agree that Robert and Curatolo would have been combined by a person of skill in the art, but it would have done it for a different reason. I'm not sure if he's drawing a finer line than I have in mind here, but that is not true. We don't agree that a person of skill in the art would have combined Robert and Curatolo and certainly not in the way that the board did here. He also argued to the court that Robert has essentially everything except for the monitoring station and specifically he said that Robert has all the transmitted signals. That too is not true. The monitoring station is required under the claims to get a second reply signal. That is missing. Also, the monitoring station has to be connected back to the user terminal. That is also missing and there was no basis to combine Curatolo with Robert to add all these functionalities when Robert had a complete system that was already successfully monitoring the fleet of vehicles that were involved. He also talked about the board's finding that it would have been suitable to make this combination. As this court knows, suitability is not enough. The court has been clear that obvious concerns whether a skilled artisan not only could have made the combination but would have been motivated to make. And our core point is that in 2005, a skilled artisan would not have been motivated to keep Robert's outdated decentralized network of roving GPS stations when as Robert, excuse me, could just put the GPS directly in the target. There's no reason a person of skill in the art would have kept the old Robert system and added on top of it a redundant monitoring station. And the board's view otherwise is hindsight. And if this court means what it says and if KSR meant what it said when it talked about the dangers of hindsight and talked about the importance of recognizing how a person of skill in the art needs to have a reason or a motivation to modify the prior art, this is that case. There is no motivation and the board's finding otherwise should be reversed. Unless there are questions. Okay, thank you. Thank you, counsel. The case is submitted.